# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CP-00194-COA

**AARON L. PATANE A/K/A AARON LEE PATANE A/K/A AARON PATANE**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/2016 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AARON L. PATANE (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POST- CONVICTION RELIEF DENIED |
| DISPOSITION: | AFFIRMED – 04/18/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1. Aaron Patane appeals the judgment of the Circuit Court of Calhoun County, denying his motion for post-conviction relief (PCR). He raises three issues: (1) his guilty plea was involuntary; (2) he received ineffective assistance of counsel; and (3) his life sentence was unconstitutional.

¶2. Finding no error, we affirm.

FACTS

¶3. In December 2014, by criminal information, Patane was charged with sexual battery in violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014). On December

18, 2014, Patane waived indictment and pleaded guilty to sexual battery. He was sentenced to life in prison and ordered to pay a $1,000 fine. On November 20, 2015, Patane filed his PCR motion; however, the circuit court denied the motion, finding that "it plainly appears from the face of the motion, exhibits and prior proceedings that the Petitioner is not entitled to any relief." Patane now appeals the circuit court's denial of his motion.

DISCUSSION

¶4. "When reviewing a trial court's decision to dismiss a . . . [PCR motion], an appellate court will not disturb the trial court's factual findings unless they are found to be clearly erroneous." *Buckley v. State*, 119 So. 3d 1171, 1173 (¶4) (Miss. Ct. App. 2013). "Our review of . . . a question of law[] is de novo." *Id*.

I. *Voluntariness of Guilty Plea*

¶5. Patane alleges that he was coerced into signing his plea petition by his attorney, and neither the court nor his attorney advised him of the rights he would be giving up or the consequences of his guilty plea. He states that he did not have time to read the documents included in the plea petition and signed them under the threat of additional charges being brought by the district attorney.

¶6. The State responds that "[a] plea is considered voluntary and intelligent if the defendant is advised about the nature of the charge against him and the consequences of the entry of the plea. The [plea] petition fully enumerates the rights that [Patane] would waive upon signing the plea." *Ward v. State*, 879 So. 2d 452, 455 (¶9) (Miss. Ct. App. 2003). "The plea petition, similarly to statements in open court, may be used to discredit post-plea

2

allegations." *Id*. The State contends that the plea petition, signed by Patane, contains all of the necessary information to verify the voluntariness of his guilty plea.

¶7.     Based on Patane's plea petition and his responses to the court's inquiries during his plea colloquy, it is clear that he was fully informed of his rights, and his plea was voluntarily and intelligently given. Patane's signed plea petition contained the requisite admonishments informing him of the following rights he would be relinquishing, among others:

> My lawyer has advised me of the nature of the charge and/or charges and the possible defenses that I may have to the charge and/or charges exhibited against me.
>
> I understand that I may plead "not guilty" and may persist in that plea and that [a.] the Constitution guarantees me the right to a speedy and public trial by jury, [b.] the right to see, hear[,] and cross[-]examine all witnesses called to testify, [c.] the right to use the power and processes of the court to compel the production of evidence including the attendance of any witnesses in my favor, [d.] the right to have the presence and assistance of a lawyer at all stages of the trial and any appeal, [e.] the right to testify in my own defense, [f.] the right to a jury verdict of all twelve juror[s] before I could be found guilty, [g.] I understand that if I plea[d] not guilty and demand a jury trial I would be by law presumed innocent of the charge and/or charges at the outset of a jury trial and that presumption would remain with me until removed by competent and credible evidence, and [I] am proven guilty beyond a reasonable doubt and to the satisfaction of twelve jurors.

In addition to the admonishments above, the plea petition also outlined explanations of Patane's: right against self incrimination, in forma pauperis right, maximum sentence for his crime—life imprisonment,[1] right to a voluntary plea, and eligibility for parole or early

---

[1] The plea petition erroneously stated that the minimum sentence was life imprisonment. However, the criminal information containing the one count to which Patane pleaded guilty provided that the minimum punishment for the sexual-battery charge was twenty years and the maximum punishment was life imprisonment. *See Dockens v. State*, 879 So. 2d 1072, 1075 (¶6) (Miss. Ct. App. 2004) (holding that failure by the trial court to inform the defendant of the maximum and minimum sentences is harmless error if the

3

release.

¶8.     During Patane's plea colloquy—addressing his understanding of the contents of his

plea petition—he had the following exchange with the court:

> [COURT]:    On each page of this plea petition there are signature lines and
> each one of them purports to bear your signature.  Did you sign
> all 7 of theses pages?
>
> [PATANE]:  Yes, sir.
>
> [COURT]:    Before you signed it did you go over it with your attorney?
>
> [PATANE]:  Yes, sir.
>
> [COURT]:    Did your attorney explain the contents of this petition to you and
> explain it to you in a way that you could understand?
>
> [PATANE]:  Yes, sir.
>
> * * * *
>
> [COURT]:    Are you satisfied with the services of your attorney?
>
> [PATANE]:  Yes, sir.
>
> * * * *
>
> [COURT]:    Has anybody done anything to intimidate you, threaten you[,]
> coerce you[,] or otherwise force you to plead guilty?
>
> [PATANE]:  No sir.
>
> [COURT]:    You understand that the Department of Corrections calculates
> sex offenders on a quote, day for day basis; do you understand
> that?

---

defendant was correctly informed by another source such as the indictment).  Patane stated
under oath that he had received a copy of the criminal information and that he had a tenth-
grade education.

4

[PATANE]:  Yes, sir.

¶9.     As Patane's plea petition and plea colloquy clearly demonstrate that he was fully informed of the rights that he would relinquish by pleading guilty, we find no merit to his assertion that his guilty plea was not entered freely and voluntarily.  This issue is without merit.

## II.     Ineffective Assistance of Counsel

¶10.    Patane argues that he would not have pleaded guilty and would have taken his case to trial had his counsel not provided ineffective assistance. He asserts that his attorney demanded that he sign the plea-petition documents or the State would withdraw its offer.  He also asserts that his counsel provided no explanation as to what he was signing, and specifically did not explain the minimum and maximum sentences for the charge.  He states that he was led to believe that a life sentence was the lowest sentence available for the charge.  Patane further asserts that his counsel was appointed on December 18, 2014, the same day that he signed his waiver of indictment and plea petition for a sentence of life in prison.  He argues that it was not possible for his counsel to perform his due diligence by investigating the facts of the case, reviewing the prosecution's evidence, and concluding it was in his best interest to accept a life sentence—in a matter of minutes from the time of his appointment.[2]

¶11.    In order to prove ineffective assistance of counsel—in the context of a guilty plea—a

---

[2] There is a contradictory statement in Patane's affidavit that says he met his attorney on December 5, 2014, although he was not officially appointed based on the order appointing counsel on December 18, 2015.

5

defendant "must show that, were it not for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Burrough v. State*, 9 So. 3d 368, 373 (¶22) (Miss. 2009). The State asserts that Patane makes no such showing and offers no support for his allegations except his own affidavit. Since Patane failed to provide affidavits—other than his own—in support of his arguments, the State alleges that "[w]here a party offers only his affidavit, then his ineffective assistance of counsel claim is without merit." *Bass v. State*, 174 So. 3d 883, 885 (¶6) (Miss. Ct. App. 2015). However, this Court has clarified the scope of that interpretation, stating:

> The fact that there [are] no affidavits does not in and of itself render the motion invalid. The statute states affidavits are required of those witnesses that will testify. Thus, if there are no witnesses to the allegations asserted by the appellant, there is no requirement for supporting affidavits. Rather, the appellant may attest to the facts that he intends to prove through his petition. Thus, a [PCR] motion is not properly denied based solely on the fact that there are no supporting affidavits.

*Castro v. State*, 159 So. 3d 1217, 1219 (¶7) (Miss. Ct. App. 2015). As in *Castro*, there were no witnesses to testify to Patane's private interactions with his attorney, the content of which may or may not support his claim that his counsel was ineffective and that counsel's ineffectiveness was the basis for Patane choosing to plead guilty. Despite the allegations in his affidavit, when asked during his plea colloquy if he was satisfied with the services of his attorney, Patane responded, "Yes, sir."

¶12. There is no possibility of parole for a person convicted of a sex crime. Miss. Code Ann. § 47-7-3 (Rev. 2015). The punishment for sexual battery provided by the code section that Patane was charged under states that "every person who shall be convicted of sexual

6

battery under Section 97-3-95(1)(d) who is eighteen (18) years of age or older shall be imprisoned for life in the State Penitentiary or such lesser term of imprisonment as the court may determine, but not less than twenty (20) years." Miss. Code Ann. § 97-3-101(3) (Rev. 2014).

¶13.    In light of this information, there does not appear to be any cognizable motivation for Patane to plead guilty and receive a sentence of life in prison to avoid additional charges that would have effectively made his sentence exactly the same. A trial by jury would seem to prove more advantageous when weighing the absolute of life in prison versus the possibility of twenty years or an acquittal. Although an on-the-record explanation of why Patane chose to accept the plea agreement would be helpful, the absence of such an explanation does not amount to ineffective assistance of counsel. Patane's plea colloquy contradicts his current arguments, as the State clearly recommended "that Mr. Patane be sentenced to life in the custody of the Mississippi Department of Corrections." The State further advised that it was the State's understanding that Patane's time would be a day-for-day sentence. The court also informed Patane: "If the court sentences you to life in prison I don't know when or if there will be a parole date. I am through predicting what the Department of Corrections might do with any offense." The court later reiterated its concern for Patane's understanding of the consequences of his plea by stating, "I do not know if and when you will ever be entitled to any sort of parole[,] and I don't want you to rely on anything I have said or failed to say as a reason for agreeing to the plea recommendation . . . ."

¶14.    In analyzing the ineffective-assistance-of-counsel claim, based on the record before

us, we find that Patane has not proven that his counsel was in error, except as to the minimum sentence placed in the plea petition. However, we find that he failed to prove that there was "a reasonable probability that, *but for counsel's errors*, [he] would not have pleaded guilty and would have insisted on going to trial." *Keith v. State*, 999 So. 2d 383, 389-90 (¶17) (Miss. Ct. App. 2008) (emphasis added) (internal citations and quotations omitted). As previously discussed, Patane was aware of the rights he was giving up and the effect that his guilty plea could potentially have on his eligibility for parole, yet he chose to plead guilty anyway. Although the plea petition mistakenly stated that the minimum sentence was life imprisonment, and no one during the plea colloquy corrected the information, we cannot conclude that but for this error, Patane would have chosen to go to trial and face the eight other charges involving his abuse of the minor child, including additional charges of sexual battery, possession of child pornography, and touching for lustful purposes. Moreover, he could have eventually been prosecuted as a habitual offender, which would have netted him a life sentence. Further, as stated, he was informed by the criminal information as to the minimum sentence for the charge to which he pleaded guilty. Consequently, this issue is without merit.

### III. Life Sentence

¶15. Patane argues that his life sentence was illegal and therefore unconstitutional because it was handed down without the recommendation of a jury. However, the State correctly responds that "[u]nlike most crimes that carry a potential sentence of life, section 97-3-101(3) does not require that a jury make the determination as to whether the defendant will

receive life in prison or some lesser sentence." *Carter v. State*, 996 So. 2d 112, 128-29 (¶43) (Miss. Ct. App. 2008). As stated previously, sexual battery carries a sentence of life imprisonment or "such lesser term of imprisonment as the court may determine, but not less than (20) years." Miss. Code Ann. 97-3-101(3). Since the code section Patane was charged under does not require a jury to decide whether a defendant receives a life sentence, the court was within it rights to sentence him to a life sentence. Patane's sentence is constitutional; therefore, this issue is without merit.

¶16. **THE JUDGMENT OF THE CALHOUN COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CALHOUN COUNTY**.

**LEE, C.J., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. GRIFFIS, P.J., AND WILSON, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**